LENAWEE COUNTY BOARD OF HEALTH v MESSERLY

Docket No. 65513. Argued November 9, 1981 (Calendar No. 3).—
Decided December 23, 1982.

The Lenawee County Board of Health brought an action in the
Lenawee Circuit Court against William H. Messerly and Mar-
tha B. Messerly, land contract vendors, and Carl A. Pickles and
Nancy L. Pickles, land contract vendees, seeking to enjoin the
use of the real property sold by the vendors to the vendees for
human habitation until the property was brought into conform-
ity with the county sanitation code. The Messerlys filed a cross-
complaint against the Pickleses, seeking foreclosure of the land
contract, sale of the property, and a deficiency judgment. The
Pickleses counterclaimed for rescission, and brought a third-
party complaint against James E. Barnes and Joan L. Barnes,
former land contract vendees, and Linehan Realty Company
and Andrew E. Czmer, alleging wilful concealment and misrep-
resentation of the condition of the sanitation system of the
property. The circuit court, Harvey W. Moes, J., granted the
injunction and, after a bench trial, concluded that there was no
fraud or misrepresentation and that the Pickleses had no cause
of action against either the Messerlys or the Barneses, ordered
foreclosure against the Pickleses, and entered a judgment for
principal and interest on the contract. The Court of Appeals,
Allen, P.J., and V. J. Brennan and MacKenzie, JJ., affirmed the
decision of the trial court with respect to the Barneses, but
reversed with respect to the Messerlys, concluding that there
was a mutual mistake between the Messerlys and the Pickleses
which went to a basic element of the contract (Docket No.
44690). The Messerlys appeal.

    In an opinion by Justice Ryan, joined by Chief Justice Fitz-
gerald and Justices Kavanagh, Williams, Levin, and Coleman,
the Supreme Court *held:*

    All of the parties erroneously assumed that the property was

REFERENCES FOR POINTS IN HEADNOTES
[1-5] 17 Am Jur 2d, Contracts §§ 143 *et seq.,* 501 *et seq.*
77 Am Jur 2d, Vendor and Purchaser §§ 51 *et seq.,* 552.
[3] 77 Am Jur 2d, Vendor and Purchaser § 59.
[4] 17 Am Jur 2d, Contracts § 145.

suitable for human habitation and could be used to generate rental income. The mistake was fundamental; however, the equitable remedy of rescission is not proper because on the facts of the case the risk of the mistake should be allocated to the purchasers.

1. A contractual mistake is a belief which is not in accord with the facts. The erroneous belief of one or both parties must relate to a fact in existence at the time of execution of the contract. In this case, the parties were mistaken in their belief that the property could be used to generate rental income; it was not usable for that purpose because the Messerlys' grantor had installed a nonconforming septic system which was inadequate to serve the property, and which it was not practical to correct.

2. A contract may be rescinded because of a mutual mistake, but the remedy is granted only in the sound discretion of the court. Generally, rescission is indicated where the mistake relates to a basic assumption upon which the contract is made and which materially affects the agreed performances. Rescission is not available, however, where the party seeking rescission has assumed the risk of loss in connection with the mistake. In this case, the parties agreed by a clause added at the end of the land contract that the Pickleses as purchasers accepted the property "as is". The risk of loss was thus assigned to the purchasers.

Reversed.

98 Mich App 478; 295 NW2d 903 (1980) reversed.

1. CONTRACTS — MISTAKE — RESCISSION.

The distinction often drawn between contractual mistakes running to the value of the consideration, for which rescission is not allowed, and mistakes touching the substance of the consideration, for which rescission is allowed, is inexact and confusing; the better-reasoned approach is a case-by-case analysis by which rescission is indicated when the mistaken belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performance of the parties.

2. CONTRACTS — MISTAKE — RESCISSION.

Generally, rescission of a contract for mutual mistake is available where the mistake relates to a basic assumption about a fact in existence at the time of the execution of the contract upon which the contract is made and which materially affects the agreed performances.

3. CONTRACTS — MISTAKE — RESCISSION.
   A contract may be rescinded because of mutual mistake, but the
   remedy is granted only in the sound discretion of the court.

4. CONTRACTS — MISTAKE — ALLOCATION OF RISK.
   Rescission of a contract for mutual mistake is not available
   where the party seeking rescission has assumed the risk of loss
   in connection with the mistake.

5. VENDOR AND PURCHASER — LAND CONTRACTS — MISTAKE — RESCIS-
   SION — RISK OF LOSS.
   The inclusion of an "as is" clause in a land contract assigned the
   risk of loss because of defects which were unknown at the time
   the contract was executed to the purchasers, precluding rescis-
   sion where it later became apparent that a defect in the septic
   system, unknown to either party at the time of the agreement,
   rendered mistaken the parties' assumption that the property
   was suitable for human habitation and could be used to gener-
   ate rental income.

*Force & Baldwin* (by *Lawrence C. Force)* for the
Messerlys.

*Robertson, Bartlow, Des Chenes & Sauter, P.C.*
(by *Michael J. Sauter),* for the Pickleses.

RYAN, J. In March of 1977, Carl and Nancy
Pickles, appellees, purchased from appellants, Wil-
liam and Martha Messerly, a 600-square-foot tract
of land upon which is located a three-unit apart-
ment building. Shortly after the transaction was
closed, the Lenawee County Board of Health con-
demned the property and obtained a permanent
injunction which prohibits human habitation on
the premises until the defective sewage system is
brought into conformance with the Lenawee
County sanitation code.

We are required to determine whether appellees
should prevail in their attempt to avoid this land
contract on the basis of mutual mistake and fail-
ure of consideration. We conclude that the parties
did entertain a mutual misapprehension of fact,

but that the circumstances of this case do not warrant rescission.

## I

The facts of the case are not seriously in dispute. In 1971, the Messerlys acquired approximately one acre plus 600 square feet of land. A three-unit apartment building was situated upon the 600-square-foot portion. The trial court found that, prior to this transfer, the Messerlys' predecessor in title, Mr. Bloom, had installed a septic tank on the property without a permit and in violation of the applicable health code. The Messerlys used the building as an income investment property until 1973 when they sold it, upon land contract, to James Barnes who likewise used it primarily as an income-producing investment.[1]

Mr. and Mrs. Barnes, with the permission of the Messerlys, sold approximately one acre of the property in 1976, and the remaining 600 square feet and building were offered for sale soon thereafter when Mr. and Mrs. Barnes defaulted on their land contract. Mr. and Mrs. Pickles evidenced an interest in the property, but were dissatisfied with the terms of the Barnes-Messerly land contract. Consequently, to accommodate the Pickleses' preference to enter into a land contract directly with the Messerlys, Mr. and Mrs. Barnes executed a quitclaim deed which conveyed their interest in the property back to the Messerlys. After inspecting the property, Mr. and Mrs. Pickles executed a new land contract with the Messerlys on March

---

[1] James Barnes was married shortly after he purchased the property. Mr. and Mrs. Barnes lived in one of the apartments on the property for three months and, after they moved, Mrs. Barnes continued to aid in the management of the property.

21, 1977. It provided for a purchase price of $25,-500. A clause was added to the end of the land contract form which provides:

> "17. Purchaser has examined this property and agrees to accept same in its present condition. There are no other or additional written or oral understandings."

Five or six days later, when the Pickleses went to introduce themselves to the tenants, they discovered raw sewage seeping out of the ground. Tests conducted by a sanitation expert indicated the inadequacy of the sewage system. The Lenawee County Board of Health subsequently condemned the property and initiated this lawsuit in the Lenawee Circuit Court against the Messerlys as land contract vendors, and the Pickleses, as vendees, to obtain a permanent injunction proscribing human habitation of the premises until the property was brought into conformance with the Lenawee County sanitation code. The injunction was granted, and the Lenawee County Board of Health was permitted to withdraw from the lawsuit by stipulation of the parties.

When no payments were made on the land contract, the Messerlys filed a cross-complaint against the Pickleses seeking foreclosure, sale of the property, and a deficiency judgment. Mr. and Mrs. Pickles then counterclaimed for rescission against the Messerlys, and filed a third-party complaint against the Barneses, which incorporated, by reference, the allegations of the counterclaim against the Messerlys. In count one, Mr. and Mrs. Pickles alleged failure of consideration. Count two charged Mr. and Mrs. Barnes with wilful concealment and misrepresentation as a result of their failure to disclose the condition of the sanitation

system. Additionally, Mr. and Mrs. Pickles sought to hold the Messerlys liable in equity for the Barneses' alleged misrepresentation. The Pickleses prayed that the land contract be rescinded.[2]

After a bench trial, the court concluded that the Pickleses had no cause of action against either the Messerlys or the Barneses as there was no fraud or misrepresentation. This ruling was predicated on the trial judge's conclusion that none of the parties knew of Mr. Bloom's earlier transgression or of the resultant problem with the septic system until it was discovered by the Pickleses, and that the sanitation problem was not caused by any of the parties. The trial court held that the property was purchased "as is", after inspection and, accordingly, its "negative * * * value cannot be blamed upon an innocent seller". Foreclosure was ordered against the Pickleses, together with a judgment against them in the amount of $25,943.09.[3]

Mr. and Mrs. Pickles appealed from the adverse judgment. The Court of Appeals unanimously affirmed the trial court's ruling with respect to Mr. and Mrs. Barnes but, in a two-to-one decision, reversed the finding of no cause of action on the Pickleses' claims against the Messerlys. *Lenawee County Board of Health v Messerly,* 98 Mich App 478; 295 NW2d 903 (1980).[4] It concluded that the

[2] Linehan Realty Company and Andrew E. Czmer, doing business as Andrew Realty Company, were also named as third-party defendants, but were later dismissed from the lawsuit by stipulation of the parties.

[3] The parties stipulated that this amount was due on the land contract, assuming that the contract was valid and enforceable.

[4] Judge MacKenzie dissented from this part of the opinion. She would have held that the trial court's refusal to grant rescission to Mr. and Mrs. Pickles was not an abuse of discretion.

"I would find that the trial court correctly denied rescission to Mr. and Mrs. Pickles, who received essentially the same property they bargained for and failed to prove that any mistake or failure of

mutual mistake[5] between the Messerlys and the Pickleses went to a basic, as opposed to a collateral, element of the contract,[6] and that the parties intended to transfer income-producing rental property but, in actuality, the vendees paid $25,500 for an asset without value.[7]

consideration existed at the time the parties entered into the contract." 98 Mich App 494.

[5] Mr. and Mrs. Pickles did not allege mutual mistake as a ground for rescission in their pleadings. However, the trial court characterized their failure of consideration argument as mutual mistake resulting in failure of consideration. Recognizing a potential difficulty in reversing the trial court on an issue not raised by the pleadings, the Court of Appeals devoted a footnote to an explanation of its decision to consider the mutual mistake argument.

"[4] The pleadings below set forth the Pickleses' theory as failure of consideration. However, it appears that the trial judge considered the failure of consideration issue to be essentially rooted in an allegation of mutual mistake. While issues not pleaded or otherwise presented to the trial court are not available for use on appeal, *Long Mfg Co, Inc v Wright-Way Farm Service, Inc,* 39 Mich App 546; 197 NW2d 862 (1972), *rev'd on other grounds,* 391 Mich 82 (1974), we address the issue of mutual mistake as one 'otherwise presented to the trial court'.

"We further note that an exception to the general rule that an issue not raised before the trial court cannot be raised on appeal exists where the issue has been fully briefed, and this Court in the interest of justice chooses to consider it. *Turner v Ford Motor Co,* 81 Mich App 521, 525, fn 2; 265 NW2d 400 (1978)." 98 Mich App 485, fn 4.

Since the mutual mistake issue was dispositive in the Court of Appeals, we find its consideration necessary to a proper determination of this case.

[6] Mr. and Mrs. Pickles did not appeal the trial court's finding that there was no fraud or misrepresentation by the Messerlys or Mr. and Mrs. Barnes. Likewise, the propriety of that ruling is not before this Court today.

[7] The trial court found that the only way that the property could be put to residential use would be to pump and haul the sewage, a method which is economically unfeasible, as the cost of such a disposal system amounts to double the income generated by the property. There was speculation by the trial court that the adjoining land might be utilized to make the property suitable for residential use, but, in the absence of testimony directed at that point, the court refused to draw any conclusions. The trial court and the Court of Appeals both found that the property was valueless, or had a negative value.

We granted the Messerlys' application for leave to appeal. 411 Mich 900 (1981).[8]

## II

We must decide initially whether there was a mistaken belief entertained by one or both parties to the contract in dispute and, if so, the resultant legal significance.[9]

A contractual mistake "is a belief that is not in accord with the facts". 1 Restatement Contracts, 2d, § 151, p 383. The erroneous belief of one or both of the parties must relate to a fact in existence at the time the contract is executed. *Richardson Lumber Co v Hoey,* 219 Mich 643; 189 NW 923 (1922); *Sherwood v Walker,* 66 Mich 568, 580; 33 NW 919 (1887) (SHERWOOD, J., *dissenting).* That is to say, the belief which is found to be in error may not be, in substance, a prediction as to a future occurrence or non-occurrence. *Henry v Thomas,* 241 Ga 360; 245 SE2d 646 (1978); *Hailpern v Dryden,* 154 Colo 231; 389 P2d 590 (1964). But see *Denton v Utley,* 350 Mich 332; 86 NW2d 537 (1957).

The Court of Appeals concluded, after a *de novo* review of the record, that the parties were mistaken as to the income-producing capacity of the property in question. 98 Mich App 487-488. We agree. The vendors and the vendees each believed that the property transferred could be utilized as

[8] The Court of Appeals decision to affirm the trial court's finding of no cause of action against Mr. and Mrs. Barnes has not been appealed to this Court and, accordingly, the propriety of that ruling is not before us today.

[9] We emphasize that this is a bifurcated inquiry. Legal or equitable remedial measures are not mandated in every case in which a mutual mistake has been established.

income-generating rental property. All of the parties subsequently learned that, in fact, the property was unsuitable for any residential use.

Appellants assert that there was no mistake in the contractual sense because the defect in the sewage system did not arise until after the contract was executed. The appellees respond that the Messerlys are confusing the date of the inception of the defect with the date upon which the defect was discovered.

This is essentially a factual dispute which the trial court failed to resolve directly. Nevertheless, we are empowered to draw factual inferences from the facts found by the trial court. GCR 1963, 865.1(6).

An examination of the record reveals that the septic system was defective prior to the date on which the land contract was executed. The Messerlys' grantor installed a nonconforming septic system without a permit prior to the transfer of the property to the Messerlys in 1971. Moreover, virtually undisputed testimony indicates that, assuming ideal soil conditions, 2,500 square feet of property is necessary to support a sewage system adequate to serve a three-family dwelling. Likewise, 750 square feet is mandated for a one-family home. Thus, the division of the parcel and sale of one acre of the property by Mr. and Mrs. Barnes in 1976 made it impossible to remedy the already illegal septic system within the confines of the 600-square-foot parcel.[10]

[10] It is crucial to distinguish between the date on which a belief relating to a particular fact or set of facts becomes erroneous due to a change in the fact, and the date on which the mistaken nature of the belief is discovered. By definition, a mistake cannot be discovered until after the contract is executed. If the parties were aware, prior to

Appellants do not dispute these underlying facts which give rise to an inference contrary to their contentions.

Having determined that when these parties entered into the land contract they were laboring under a mutual mistake of fact, we now direct our attention to a determination of the legal significance of that finding.

A contract may be rescinded because of a mutual misapprehension of the parties, but this remedy is granted only in the sound discretion of the court. *Harris v Axline,* 323 Mich 585; 36 NW2d 154 (1949). Appellants argue that the parties' mistake relates only to the quality or value of the real estate transferred, and that such mistakes are collateral to the agreement and do not justify rescission, citing *A & M Land Development Co v Miller,* 354 Mich 681; 94 NW2d 197 (1959).

In that case, the plaintiff was the purchaser of 91 lots of real property. It sought partial rescission of the land contract when it was frustrated in its attempts to develop 42 of the lots because it could not obtain permits from the county health department to install septic tanks on these lots. This Court refused to allow rescission because the mistake, whether mutual or unilateral, related only to the value of the property.

"There was here no mistake as to the form or substance of the contract between the parties, or the description of the property constituting the subject

the execution of a contract, that they were in error concerning a particular fact, there would be no misapprehension in signing the contract. Thus stated, it becomes obvious that the date on which a mistaken fact manifests itself is irrelevant to the determination whether or not there was a mistake.

matter. The situation involved is not at all analogous to that presented in *Scott v Grow,* 301 Mich 226; 3 NW2d 254; 141 ALR 819 (1942). There the plaintiff sought relief by way of reformation of a deed on the ground that the instrument of conveyance had not been drawn in accordance with the intention and agreement of the parties. It was held that the bill of complaint stated a case for the granting of equitable relief by way of reformation. In the case at bar plaintiff received the property for which it contracted. The fact that it may be of less value than the purchaser expected at the time of the transaction is not a sufficient basis for the granting of equitable relief, neither fraud nor reliance on misrepresentation of material facts having been established." 354 Mich 693-694.

Appellees contend, on the other hand, that in this case the parties were mistaken as to the very nature of the character of the consideration and claim that the pervasive and essential quality of this mistake renders rescission appropriate. They cite in support of that view *Sherwood v Walker,* 66 Mich 568; 33 NW 919 (1887), the famous "barren cow" case. In that case, the parties agreed to the sale and purchase of a cow which was thought to be barren, but which was, in reality, with calf. When the seller discovered the fertile condition of his cow, he refused to deliver her. In permitting rescission, the Court stated:

"It seems to me, however, in the case made by this record, that the mistake or misapprehension of the parties went to the whole substance of the agreement. If the cow was a breeder, she was worth at least $750; if barren, she was worth not over $80. The parties would not have made the contract of sale except upon the understanding and belief that she was incapable of breeding, and of no use as a cow. It is true she is now the identical animal that they thought her to be when the contract was made; there is no mistake as to the identity of the creature. Yet the mistake was not of the

mere quality of the animal, but went to the very nature of the thing. A barren cow is substantially a different creature than a breeding one. There is as much difference between them for all purposes of use as there is between an ox and a cow that is capable of breeding and giving milk. If the mutual mistake had simply related to the fact whether she was with calf or not for one season, then it might have been a good sale; but the mistake affected the character of the animal for all time, and for her present and ultimate use. She was not in fact the animal, or the kind of animal, the defendants intended to sell or the plaintiff to buy. She was not a barren cow, and, if this fact had been known, there would have been no contract. The mistake affected the substance of the whole consideration, and it must be considered that there was no contract to sell or sale of the cow as she actually was. The thing sold and bought had in fact no existence. She was sold as a beef creature would be sold; she is in fact a breeding cow, and a valuable one.

"The court should have instructed the jury that if they found that the cow was sold, or contracted to be sold, upon the understanding of both parties that she was barren, and useless for the purpose of breeding, and that in fact she was not barren, but capable of breeding, then the defendants had a right to rescind, and to refuse to deliver, and the verdict should be in their favor." 66 Mich 577-578.

As the parties suggest, the foregoing precedent arguably distinguishes mistakes affecting the essence of the consideration from those which go to its quality or value, affording relief on a per se basis for the former but not the latter. See, *e.g., Lenawee County Board of Health v Messerly,* 98 Mich App 478, 492; 295 NW2d 903 (1980) (MacKenzie, J., *concurring in part).*

However, the distinctions which may be drawn from *Sherwood* and *A & M Land Development Co* do not provide a satisfactory analysis of the nature of a mistake sufficient to invalidate a contract.

Often, a mistake relates to an underlying factual assumption which, when discovered, directly affects value, but simultaneously and materially affects the essence of the contractual consideration. It is disingenuous to label such a mistake collateral. *McKay v Coleman,* 85 Mich 60; 48 NW 203 (1891). Corbin, Contracts (one vol ed), § 605, p 551.

Appellant and appellee both mistakenly believed that the property which was the subject of their land contract would generate income as rental property. The fact that it could not be used for human habitation deprived the property of its income-earning potential and rendered it less valuable. However, this mistake, while directly and dramatically affecting the property's value, cannot accurately be characterized as collateral because it also affects the very essence of the consideration. "The thing sold and bought [income-generating rental property] had in fact no existence". *Sherwood v Walker,* 66 Mich 578.

We find that the inexact and confusing distinction between contractual mistakes running to value and those touching the substance of the consideration serves only as an impediment to a clear and helpful analysis for the equitable resolution of cases in which mistake is alleged and proven. Accordingly, the holdings of *A & M Land Development Co* and *Sherwood* with respect to the material or collateral nature of a mistake are limited to the facts of those cases.

Instead, we think the better-reasoned approach is a case-by-case analysis whereby rescission is indicated when the mistaken belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties. *Denton v Ut-*

*ley,* 350 Mich 332; 86 NW2d 537 (1957); *Farhat v Rassey,* 295 Mich 349; 294 NW 707 (1940); *Richardson Lumber Co v Hoey,* 219 Mich 643; 189 NW 923 (1922). 1 Restatement Contracts, 2d, § 152, pp 385-386.[11] Rescission is not available, however, to relieve a party who has assumed the risk of loss in connection with the mistake. *Denton v Utley,* 350 Mich 344-345; *Farhat v Rassey,* 295 Mich 352; Corbin, Contracts (one vol ed), § 605, p 552; 1 Restatement Contracts, 2d, §§ 152, 154, pp 385-386, 402-406.[12]

All of the parties to this contract erroneously assumed that the property transferred by the vendors to the vendees was suitable for human habitation and could be utilized to generate rental income. The fundamental nature of these assumptions is indicated by the fact that their invalidity changed the character of the property transferred,

[11] The parties have invited our attention to the first edition of the Restatement of Contracts in their briefs, and the Court of Appeals cites to that edition in its opinion. However, the second edition was published subsequent to the issuance of the lower court opinion and the filing of the briefs with this Court. Thus, we take it upon ourselves to refer to the latest edition to aid us in our resolution of this case.

Section 152 delineates the legal significance of a mistake.

"§ 152. When Mistake of Both Parties Makes a Contract Voidable

"(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

"(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

[12] "§ 154. When a Party Bears the Risk of a Mistake

"A party bears the risk of a mistake when

"(a) the risk is allocated to him by agreement of the parties, or

"(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

"(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so."

thereby frustrating, indeed precluding, Mr. and Mrs. Pickles' intended use of the real estate. Although the Pickleses are disadvantaged by enforcement of the contract, performance is advantageous to the Messerlys, as the property at issue is less valuable absent its income-earning potential. Nothing short of rescission can remedy the mistake. Thus, the parties' mistake as to a basic assumption materially affects the agreed performances of the parties.

Despite the significance of the mistake made by the parties, we reverse the Court of Appeals because we conclude that equity does not justify the remedy sought by Mr. and Mrs. Pickles.

Rescission is an equitable remedy which is granted only in the sound discretion of the court. *Harris v Axline,* 323 Mich 585; 36 NW2d 154 (1949); *Hathaway v Hudson,* 256 Mich 694; 239 NW 859 (1932). A court need not grant rescission in every case in which the mutual mistake relates to a basic assumption and materially affects the agreed performance of the parties.

In cases of mistake by two equally innocent parties, we are required, in the exercise of our equitable powers, to determine which blameless party should assume the loss resulting from the misapprehension they shared.[13] Normally that can only be done by drawing upon our "own notions of

[13] This risk-of-loss analysis is absent in both *A & M Land Development Co* and *Sherwood,* and this omission helps to explain, in part, the disparate treatment in the two cases. Had such an inquiry been undertaken in *Sherwood,* we believe that the result might have been different. Moreover, a determination as to which party assumed the risk in *A & M Land Development Co* would have alleviated the need to characterize the mistake as collateral so as to justify the result denying rescission. Despite the absence of any inquiry as to the assumption of risk in those two leading cases, we find that there exists sufficient precedent to warrant such an analysis in future cases of mistake.

what is reasonable and just under all the surrounding circumstances".[14]

Equity suggests that, in this case, the risk should be allocated to the purchasers. We are guided to that conclusion, in part, by the standards announced in § 154 of the Restatement of Contracts, 2d, for determining when a party bears the risk of mistake. See fn 12. Section 154(a) suggests that the court should look first to whether the parties have agreed to the allocation of the risk between themselves. While there is no express assumption in the contract by either party of the risk of the property becoming uninhabitable, there was indeed some agreed allocation of the risk to the vendees by the incorporation of an "as is" clause into the contract which, we repeat, provided:

"Purchaser has examined this property and agrees to accept same in its present condition. There are no other or additional written or oral understandings."

That is a persuasive indication that the parties considered that, as between them, such risk as related to the "present condition" of the property should lie with the purchaser. If the "as is" clause is to have any meaning at all, it must be interpreted to refer to those defects which were unknown at the time that the contract was executed.[15] Thus, the parties themselves assigned the risk of loss to Mr. and Mrs. Pickles.[16]

---

[14] *Hathaway v Hudson,* 256 Mich 702, quoting 9 CJ, p 1161.

[15] An "as is" clause waives those implied warranties which accompany the sale of a new home, *Tibbitts v Openshaw,* 18 Utah 2d 442; 425 P2d 160 (1967), or the sale of goods. MCL 440.2316(3)(a); MSA 19.2316(3)(a). Since implied warranties protect against latent defects, an "as is" clause will impose upon the purchaser the assumption of the risk of latent defects, such as an inadequate sanitation system, even when there are no implied warranties.

[16] An "as is" clause does not preclude a purchaser from alleging

We conclude that Mr. and Mrs. Pickles are not entitled to the equitable remedy of rescission and, accordingly, reverse the decision of the Court of Appeals.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.

fraud or misrepresentation as a basis for rescission. See 97 ALR2d 849. However, Mr. and Mrs. Pickles did not appeal the trial court's finding that there was no fraud or misrepresentation, so we are bound thereby.