**Joey Heido AKAHOSHI, Plaintiff,**

**v.**

**SOUTHERN WASTE SERVICES, and Kevin Green, Defendants.**

**No. 00–CV–74395–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 28, 2001.

John W. Martin, Jr., Plunkett & Cooney, Bloomfield Hills, MI, Wolfgang Mueller, Olsman, Ganos, Berkley, MI, for Plaintiff.

L. Graham Ward, Ward, Anderson, Richard L. Caretti, Strobl & Borda, Bloomfield Hills, MI, David B. Landry, Still, Nemier, Farmington, Hills, MI, for Defendants.

## *OPINION*

DUGGAN, District Judge.

On October 10, 2000, Plaintiff filed suit against Defendants, alleging that the negligent operation of a backhoe caused him personal injuries on October 1, 1998. In August of 2001, the parties agreed to settle the case for $50,000, and Plaintiff signed a release on September 7, 2001. On November 13, 2001, Plaintiff filed a motion to enforce the settlement agreement. On November 26, 2001, Defendants filed a response to Plaintiff's motion to enforce the settlement agreement and a motion to stay proceedings. The Court held a hearing on December 6, 2001. For the reasons set forth below, Plaintiff's motion to enforce the settlement agreement shall be granted and Defendants' motion to stay proceedings shall be denied.

### Background

This action arose out of injuries allegedly suffered by Plaintiff on October 1, 1998,

while Plaintiff was working as a laborer doing environmental clean-up in the city of Elba, Alabama. Plaintiff alleges that Defendant Southern Waste Services, and Defendant Kevin Green, its employee, were negligent in an accident involving a backhoe which caused one of Plaintiff's fingers to become severed from his hand.

Plaintiff filed suit against Defendants on October 10, 2000. On June 13, 2001, Defendants filed an emergency motion for stay of proceedings, stating:

1. This is a negligence action filed by Plaintiff against Defendants Southern Waste Services and Kevin Green, arising out of work site accident allegedly causing injuries to Plaintiff.

2. Defendants Southern Waste Services and Kevin Green are insured by Reliance National Indemnity Company, which insurance company retained counsel to represent Defendants.

3. This matter is scheduled for Case Evaluation on June 26, 2001.

4. On the afternoon of June 5, 2001, counsel for Defendants became aware of the fact that the Insurance Commissioner of the Commonwealth of Pennsylvania filed an action against Reliance National Indemnity Company and other affiliated companies, and that Reliance has been placed into rehabilitation proceedings pursuant to a Court order entered May 29, 2001. (See Exhibit A).

5. The Court Order further states that all actions currently pending anywhere against an insured of Reliance are stayed for a period of sixty (60) days. (See Exhibit A, paragraph 22).

6. The Order from the Commonwealth Court of Pennsylvania further puts into question whether any settlement or judgment would be paid or honored and further puts into question whether defense counsel will receive payment for any services rendered.

7. Consequently, based on the Commonwealth Court of Pennsylvania's Order entered May 29, 2001 defense counsel for Defendants, the insured of Reliance National Indemnity Company, respectfully requests that this Honorable Court enter a Stay of Proceedings for a period of at least sixty (60) days. (Defs.' Motion for Stay at 2). On June 20, 2001, this Court issued an Order staying proceedings in this matter for a period of sixty days. (*See* 6/20/01 Order Staying Proceedings).

"On August, 17, 2001, two days before the order staying proceedings was to be lifted, the parties concluded settlement negotiations." (Defs.' Resp. at 5–6). "Plaintiff and Defendants agreed to a settlement in the amount of $50,000 in exchange for a dismissal of the case with prejudice." (Pl.'s Mot. at 2). On August 21, 2001, "the appropriate documentation was sent to the Plaintiff." (Defs.' Resp. at 6; Ex. E). Defendants' counsel sent Plaintiff a copy of a stipulation and order for dismissal and a release for Plaintiff to sign. (*Id.*). The release, signed by Plaintiff on September 7, 2001, is attached to Plaintiff's motion as exhibit 3. The release provides, in pertinent part:

That the undersigned, being of lawful age, for the sole consideration of FIFTY THOUSAND ($50,000.00) DOLLARS, to the undersigned ... hereby ... acquits and forever discharges SOUTHERN WASTE SERVICES AND KEVIN GREEN ... from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the conse-

quences thereof resulting or to result from the accident, casualty or event whichoccurred [sic] on or about the 30TH day of SEPTEMBER, 1998 in the City of Alba, Alabama while performing flood clean up, as more fully described in the Complaint filed in the UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION, bearing Civil Action No. 00–74395 in front of the Honorable Patrick J. Duggan.

It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released and that said releasees deny liability therefor and intend merely to avoid litigation and buy their peace.

(Pl.'s Mot., Ex. 3).

Plaintiff forwarded the executed release to Defendants' counsel on September 7, 2001. Defendants state that "[b]etween September 7, 2001 and October 3, 2001, the economic position of the insurance carrier, Reliance Insurance Company and its affiliates including Reliance National, the carrier herein, went from bad to worse." (Defs.' Resp. at 6). On October 31, 2001, Reliance Insurance Company was ordered into liquidation by the Commonwealth of Pennsylvania. (*See* Defs.' Resp., Ex. H). Defendants therefore maintain that any payment from Reliance "will most likely prove to be non-existent." (Defs.' Resp. at 7).

Plaintiff filed the instant motion to enforce the settlement agreement on November 13, 2001.

### Discussion

At the hearing held on December 6, 2001, defense counsel acknowledged that he represented Defendants in this lawsuit and that both Defendants were aware of,

and accepted, his representation of them. Counsel further acknowledged that he, in fact, was authorized by the insurance carrier to agree to the $50,000 settlement on behalf of Defendants. As defense counsel L. Graham Ward was counsel of record for Defendants in this action, Plaintiff had a right to rely on Mr. Ward's agreement to settle on their behalf.

Indeed, Defendants do not assert that Mr. Ward lacked authority to negotiate a settlement on behalf of Defendants. Rather, Defendants assert that the Court should void the settlement on the basis of "mutual mistake." Defendants contend that "at no time was it represented, in any way, shape or form that the offer of settlement was being made by the Defendants. At all times it was clear that the offer was coming from the [insurance] carrier and that the carrier was in a precarious situation." (Defs.' Resp. at 6).

 Generally, rescission of a contract for mutual mistake is available where the mistake relates to a basic assumption about a fact in existence at the time of the execution of the contract upon which the contract is made and which materially affects the agreed performance. *Lenawee Bd. of Health v. Messerly,* 417 Mich. 17, 30, 331 N.W.2d 203 (1982). "The erroneous belief of one or both of the parties must relate to a fact in existence at the time the contract is executed." *Id.* (citations omitted). "That is to say, the belief which is found to be in error may not be, in substance, a prediction as to a future occurrence or non-occurrence." *Id.*

 Moreover, rescission of a contract for mutual mistake is not available where the party seeking rescission has assumed the risk of loss in connection with the mistake. "A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, or (b) he

is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." RESTATEMENT (SECOND) OF CONTRACTS § 154.

■ Defendants assert that both parties to the settlement agreement mistakenly believed that Defendants' insurance carrier would ultimately pay the settlement proceeds on behalf of the Defendants. While it may be true that both parties "expected" that the insurance carrier would pay the settlement, there is nothing in the settlement agreement that makes such "expectations" a condition of the settlement. Such mistaken "expectations" do not "relate to a fact in existence at the time the [settlement] was reached." Rather, the "alleged mistake" is more akin to a "prediction as to a future occurrence or non-occurrence."

The Court notes that the release, by its terms, mentions only the parties and makes absolutely no reference to the insurance carrier. The Court is aware that the usual procedure is not to include the name of the insurance carrier because the carrier is not a party to the action. However, in this case, defense counsel was aware of the insurance carrier's "precarious financial condition" at the time the proposed settlement agreement was drafted. If it was defense counsel's intent that the settlement agreement was to be conditioned on the insurance carrier paying the settlement amount, such a provision should have been made an express condition of the settlement proposal—which Plaintiff could have accepted or rejected.

Not only does the release *not* mention Defendants' current position that the settlement is conditioned on the insurance carrier's ability to the pay the settlement proceeds, but the release drafted by Defendants' counsel specifically provides that:

> The undersigned further declares and represents that no promise, inducement or agreement not herein expressed has been made to the undersigned and that this Release contains the entire agreement between the parties hereto and that the terms of this Release are contractual and not a mere recital.

Accordingly, Defendants have not persuaded the Court that the settlement agreement should be voided on the basis of a "mutual mistake."

### Conclusion

For the reasons set forth above, Plaintiff's motion to enforce the settlement agreement shall be granted, and Defendant's motion to stay shall be denied. An Judgment consistent with this Opinion shall issue forthwith.