*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

      Plaintiff/Counterdefendant-Appellant,

v

ACE AMERICAN INSURANCE COMPANY,

      Defendant/Cross-Defendant-Appellee,
and

MARK RUECKERT and MARYAN PETOSKEY,

      Defendants,
and

ROBYNN RUECKERT,

      Defendant/Counterplaintiff/Cross-
      Plaintiff,
and

BRISTOL WEST PREFERRED INSURANCE
COMPANY,

      Defendant.

FOR PUBLICATION
April 29, 2021
9:05 a.m.

No.   352753
Kent Circuit Court
LC No. 13-010616-CK

Before:  SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

SHAPIRO, P.J.

In this insurer-priority dispute, plaintiff Farm Bureau General Insurance Company of Michigan (Farm Bureau) appeals by right the trial court's opinion and order denying Farm Bureau's request for equitable rescission as to third party Robynn Rueckert following an evidentiary hearing.  For the reasons stated in this opinion, we affirm.

-1-

## I. BACKGROUND

This case concerns a no-fault policy that Mark Rueckert and his step-daughter Maryan Petoskey procured from Farm Bureau. Robynn is Mark's wife and Maryan's mother; all three lived together when the policy was obtained. On February 25, 2013, Mark and Maryan went to the Farm Bureau office near their home to purchase a no-fault policy for a 1996 Dodge Ram van that they jointly own. Jeffry Brandt was the Farm Bureau insurance agent at the office. Both Mark and Maryan testified that Robynn was present, and Brandt, testifying years later, could not recall if she was.[1] Brandt's main recollection was that Mark and Maryan were adamant that they would be the only drivers of the vehicle.[2]

Mark and Maryan were required to complete an insurance application for Farm Bureau, and a membership application for Farm Bureau's parent company, Michigan Farm Bureau. Either Brandt or his assistant read the questions to Mark and Maryan and then recorded their verbal answers. The membership application was completed in Mark's name. Under "spouse information," Robynn's name is listed, along with her date of birth and partial social security number. On the insurance application, only Mark and Maryan are listed as owners or drivers of the vehicle. The next section, which directed the applicants to "[l]ist all vehicle owners, residents of household, and/or separate spouse not listed above," was left blank. Mark's marital status is listed as "M." The application also contained a list of eligibility questions. Three questions are relevant to this case. Question 1 asks, "Do all drivers have a valid Michigan driver license?" The applicants answered affirmatively. Questions 9 asks if any driver within the last 36 months has been convicted of "operating a motor vehicle under the influence or while impaired by liquor or controlled substance, whether or not causing serious injury or death?"[3] The applicants answered negatively. Question 13 asks, "Has the Applicant or a member of the Applicant's household driven or moved any vehicle owned by the Applicant which has NOT had the required insurance in force for the preceding six months?" The applicants answered negatively and listed Bristol West Preferred Insurance Company (Bristol West) as the previous insurer, providing the policy number and an expiration date of May 2, 2013. Mark provided a certificate of insurance for the Bristol West policy showing that the policy covered a 2006 Chevrolet Trailblazer LMT.

The first premium payment was made at the time of application, and the application was preapproved by Farm Bureau on March 4, 2013. Larry Clark was the Farm Bureau underwriter who reviewed Mark and Maryan's application. Clark determined that the application contained incomplete or inaccurate information. Specifically, the application indicated that Mark was married but did not contain his spouse's name or other required information. There was also inconsistent address information pertaining to Maryan. On March 22, 2013, Clark sent an e-mail to Brandt asking for information about Mark's wife and Maryan's address. After Brandt did not respond for a week, Clark decided to cancel the policy. On April 22, 2013, Farm Bureau sent

---

[1] Robynn was unable to testify due to her medical condition resulting from the accident.

[2] There is no evidence that Robyn or anyone other than Mark or Maryan drove the van.

[3] The application informed that if the applicant answered yes to any question 6 through 13, the applicant would be ineligible for insurance coverage through Farm Bureau.

Mark a letter informing him that the policy was being cancelled because of an incomplete or inaccurate application and that his coverage would end on May 25, 2013.

On May 22, 2013, three days before the cancellation date, Robynn was severely injured as a pedestrian when she was struck by a garbage truck at 4:20 a.m. The truck was making a left-hand turn and hit Robynn while she was in the crosswalk when the "walk" sign was on. Robynn suffered traumatic brain injuries resulting in permanent cognitive deficits. The garbage truck was insured by defendant ACE American Insurance Company (ACE). The 1996 Dodge Ram was not involved in the accident.

Farm Bureau was made of aware of Robynn's claim for benefits under the policy when it received a bill from her hospital on June 21, 2013. Kurt Simon, a special investigator for Farm Bureau, investigated Robynn's claim. After his investigation, Simon informed Mark and Maryan in a letter dated October 22, 2013, that their policy was being rescinded and declared null and void from its inception date for material misrepresentations in the application. Simon detailed the findings of his investigation, including that Robynn was Mark's wife; that she resided at his home; and that Robynn's driving record contained multiple convictions for operating under the influence of liquor or while intoxicated. Simon also determined that the Bristol West policy relating to the Chevy Trailer Blazer listed on Mark and Maryan's February 25, 2013 application had been rescinded in November 2012, and that Robynn had been driving the uninsured vehicle on February 18, 2013, when she received a citation for driving with a suspended license. Simon concluded that the insurance application contained material misrepresentations because Robynn should have been disclosed as a driver of the insured vehicle and eligibility questions 1, 9, and 13 were answered incorrectly.

In November 2013, Farm Bureau filed a two-count complaint seeking rescission of the policy and a declaratory judgment that ACE was first in priority to pay Robynn's claim of no-fault benefits. In October 2014, Farm Bureau moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). Farm Bureau argued that there were material misrepresentations in the application for insurance and therefore it properly rescinded the policy pursuant to the antifraud clause. The trial court denied summary disposition to Farm Bureau and granted summary disposition to ACE on the grounds that Farm Bureau's decision to cancel the policy prevented it from later rescinding the policy.

On appeal, this Court reversed, reasoning that "the insurer cannot be estopped from [rescinding the policy] on the basis of facts of which the insurer was actually unaware, even if those facts could have been easily ascertained." *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co (Farm Bureau I)*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2017 (Docket No. 329585), p 2. The panel also rejected ACE's argument that Farm Bureau could not rescind the policy as to Robynn, an innocent third party, because the innocent-third-party doctrine was no longer viable in Michigan. *Id*. at 3. The panel concluded that there was "room for disagreement whether Robynn could or should be considered a 'driver' within the meaning of the policy application," but noted that eligibility question 13 pertained to "any other member of the household," which Robynn indisputably was. The panel also noted that ACE made a persuasive argument that Mark and Maryan did not engage in intentional fraud, but concluded that Farm Bureau could seek rescission on the basis of an innocent misrepresentation. *Id*. at 4. In sum, the panel concluded that there was no genuine question of fact that Mark and Maryan made

a material misrepresentation that entitled Farm Bureau to rescind the policy. Accordingly, the panel reversed the trial court's order granting summary disposition to ACE and remanded for entry of summary disposition in Farm Bureau's favor. *Id*. at 5.

ACE applied for leave to appeal with the Michigan Supreme Court. On July 18, 2018, the Supreme Court decided *Bazzi v Sentinel Ins Co*, 502 Mich 390, 396; 919 NW2d 20 (2018), in which it held that *Titan Ins Co v Hyten*, 491 Mich 547, 562-571; 817 NW2d 562 (2012), abrogated the innocent-third-party rule. However, the Court clarified that rescission was an equitable remedy, and that insurers did not have an "automatic" right to rescind an insurance policy with respect to third parties. *Id*. at 411. Following *Bazzi*, in lieu of granting leave to appeal in this case, the Supreme Court vacated the Court of Appeals opinion "only to the extent it held that Farm Bureau was automatically entitled to rescission as a matter of law," and remanded to the trial court "to determine whether rescission is available as an equitable remedy as between Farm Bureau and Robynn Rueckert." The Court denied leave in all other respects. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co (Farm Bureau II)*, 503 Mich 903 (2018). In a concurring statement, Justice MARKMAN identified five nonexclusive factors for trial courts to consider in "innocent-third party cases" to determine whether rescission would be equitable. *Id*. at 906-907 (MARKMAN, C.J., concurring).

On remand, Farm Bureau and ACE engaged in additional discovery before filing competing motions for summary disposition under MCR 2.116(C)(10), with each party arguing that it was entitled to summary disposition based on application of the five factors identified by Justice MARKMAN. The trial court determined that it could not decide whether rescission would be equitable as to Robynn under the (C)(10) standard and so scheduled an evidentiary hearing. At the hearing, the court heard testimony from Brandt (agent), Clark (underwriter), Detective Robert Zabriskie (investigating officer), Justin Klaver (claims adjuster) and Simon (investigator). Mark and Maryan's deposition transcripts were admitted into evidence along with numerous other exhibits. In a written opinion and order, the trial court found that multiple factors weighed against rescission and ultimately determined that rescission as to Robynn would not be equitable. The court reasoned that Robynn was "truly blameless, whereas Farm Bureau should be assigned some blame for the problems at the root of this case." This appeal followed.

## II. ANALYSIS

Farm Bureau argues that the trial court abused its discretion by denying rescission in this case. We disagree.[4]

---

[4] In *Pioneer State Mutual Ins Co v Wright*, 331 Mich App 396, 405, 414-415; 952 NW2d 586 (2020), this Court set forth the applicable standards of review:

> The remedy of rescission is "granted only in the sound discretion of the court." *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 26; 331 NW2d 203 (1982); see also [*Bazzi*], 502 Mich at 409. An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. *Berryman v Mackey*,

The Supreme Court's decision in *Bazzi* provided the following guidance in determining whether rescission is warranted:

> When a plaintiff is seeking rescission, "the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." Accordingly, courts are not required to grant rescission in all cases. For example, "rescission should not be granted in cases where the result thus obtained would be unjust or inequitable," or "where the circumstances of the challenged transaction make rescission infeasible." Moreover, when two equally innocent parties are affected, the court is "required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss. . . ." "[W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong." "The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked." [*Bazzi*, 502 Mich at 410-411 (citations omitted).]

The Supreme Court adopted a case-by-case approach to determine whether rescission is equitable as to third parties, stating that "an absolute approach would unduly hamper and constrain the proper functioning of such remedies." *Id*. at 411.

As noted, following *Bazzi* the Supreme Court partly vacated this Court's prior opinion in this case and remanded to the trial court "to determine whether rescission is available as an equitable remedy as between Farm Bureau and Robynn Rueckert." *Farm Bureau II*, 503 Mich 903. Justice MARKMAN wrote separately and identified five nonexclusive factors for courts to consider in determining whether rescission as to a third party is equitable. *Id*. at 906-907 (MARKMAN, C. J., concurring). He also noted that the party seeking rescission has the burden of establishing that the remedy is warranted. *Id*. at 905 (MARKMAN, C. J., concurring), citing *Gardner v Thomas R Sharp & Sons*, 279 Mich 467, 469; 272 NW 871 (1937).

Justice MARKMAN's concurring statement is not binding on this Court. See *People v Lampe*, 327 Mich App 104, 115 n 4; 933 NW2d 314 (2019). However, in *Pioneer State Mutual Ins Co v Wright*, 331 Mich App 396, 405, 411; 952 NW2d 586 (2020), we adopted Justice MARKMAN's factors, concluding that they "present[] a workable framework as well as necessary guidance to the lower courts and the litigants . . . ." We summarized the five factors as follows:

> (1) [T]he extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had

---

327 Mich App 711, 717; 935 NW2d 94 (2019). An abuse of discretion necessarily occurs when the trial court makes an error of law. *Id*. The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. at 717-718.

some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Id*. at 414-415.]

In this case, the trial court considered the five factors, as well as an additional consideration, and concluded that, as to Robynn, rescission of the Farm Bureau policy would not be equitable. We will address each factor in turn.

The trial court reasoned that the first factor[5] weighed against rescission because "[t]he lack of critical information from Mark Rueckert about his wife on the application he submitted months before the collision put Farm Bureau on notice that something could be awry," yet Farm Bureau chose to cancel the policy instead of "conducting an investigation that in all likelihood would have revealed an obvious basis for rescission, i.e., Robynn Rueckert's history of drunk driving." The record supports the trial court's conclusion that Farm Bureau exhibited a lack of professional diligence. Although Brandt, testifying six years after the event, could not recall if Robynn was present when the application was completed, both Mark and Maryan testified that she was. Brandt therefore had a full opportunity to ask her questions. In any event, even assuming Robynn was not present, the insurance application indicated that Mark was married; the membership application listed Robynn as his spouse; and Brandt agreed that it is assumed that a married couple lives together. Despite all of this, Brandt approved the insurance application that did not identify Robynn as a household member. Although Brandt ran a "C.L.U.E" (comprehensive loss underwriting exchange) report that did not identify any other drivers for the residence, the application asked more broadly for any household residents to be listed. Thus, based on the record before us, there is no justification for Brandt ignoring this obvious discrepancy.

Farm Bureau argues that, because the underwriter is the person with ultimate responsibility to determine eligibility for coverage, giving "partial information" to the insurance agent did not give effective notice to Farm Bureau that there was a household resident not identified in the insurance application. To the extent that Farm Bureau is arguing that it is not responsible for Brandt's lack of diligence, it cites no legal authority in support of that position. Brandt testified

---

[5] Justice MARKMAN provided the following explanation of the first factor:

> First, the extent to which the insurer, in fact, investigated or could have investigated the subject matter of the fraud before the innocent third party was injured, which may have led to a determination by the insurer that the insurance policy had been procured on a fraudulent basis. If the insurer could have with reasonable effort obtained information indicating that the insured had committed fraud in procuring the insurance policy, equity may weigh against rescission because the insurer may be deemed to have acted without adequate professional diligence in issuing and maintaining the policy. [*Farm Bureau II*, 503 Mich at 906 (MARKMAN, C. J., concurring).]

that he was a captive agent for Farm Bureau and a Farm Bureau employee, so there is no question that Brandt's principal was Farm Bureau, the insurance company. See *Harts v Farmers Ins Exch*, 461 Mich 1, 6-7; 597 NW2d 47 (1999). "The relationship between the insurer and its agent is controlled by the principles of agency." *Id*. at 7. "[A] duly authorized agent has the power to act and bind the principal to the same extent as if the principal acted." *In re Estate of Capuzzi*, 470 Mich 399, 402; 684 NW2d 677 (2004). We therefore see no basis for concluding that Farm Bureau is not responsible for Brandt's lack of diligence, which we conclude weighs heavily against rescission as the trial court found.

Even focusing only on the underwriter's actions, the record still supports the court's conclusion that Farm Bureau could have discovered the grounds for rescission with reasonable efforts. Clark knew there was a problem with the application because it indicated that Mark was married but gave no information about his spouse. However, Clark merely e-mailed Brandt for additional information, and when he received no response after a week, he decided to cancel the policy effective at a future date rather than: (a) follow up with Brandt; (b) contact the insureds; or (c) perform any additional investigation. Indeed, Clark could have easily obtained identifying information about Robynn from the membership application, which provided her name, date of birth, and partial security number.[6] While Clark testified that it was not a typical part of the underwriting process to obtain a copy of the membership application, he agreed that he could have done so.

Farm Bureau also argues that an additional investigation into Robynn would not have provided grounds for rescission on eligibility question 13 because her driving record would not have shown that she had driven an uninsured vehicle in the past six months. Recall that in this Court's prior opinion, we concluded that rescission was warranted for the applicants' response to question 13 (pertaining to drivers and household residents) and indicated that there was a question of fact whether questions 1 and 9 (pertaining to drivers only) were falsely answered because there was "room for disagreement" whether Robynn should have been disclosed as a driver of the insured vehicle. *Farm Bureau I*, unpub op at 4. Thus, Farm Bureau argues, Robynn's driving record was not relevant to the only grounds for rescission that have been judicially determined in this case. But the fact remains that Farm Bureau sought rescission, in part, on the basis of Robynn

---

[6] Farm Bureau argues that the trial court's ruling imposes a legal duty on it to discover fraud, contrary to *Titan Ins Co*, 491 Mich 547. But in *Pioneer* we rejected that the first factor is inconsistent with *Titan Ins Co*:

> In *Titan Ins Co*[, 491 Mich at 572-573], our Supreme Court held that "an insurer may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, rescission, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and the claimant is a third-party." The first factor does not impose a duty to investigate upon insurers, contrary to *Titan Ins Co*, but merely addresses the process of procurement of insurance and any information disclosed. [*Pioneer*, 331 Mich App at 412 n 6.]

not being disclosed as a driver of the insured vehicle who did not have a valid license and who had been convicted of operating while intoxicated in the past 36 months. Thus, an investigation into Robynn and her driving record before the accident would have led Farm Bureau to rescind the policy. Whether a jury would have ultimately agreed with Farm Bureau that Robynn should have been disclosed as a driver of the insured vehicle is a different question.[7] In sum, the trial court did not clearly err by concluding Farm Bureau exhibited a lack of professional diligence that prevented it from discovering the grounds for rescission that it later claimed.

As to the second factor,[8] the trial court noted that there was "scant evidence that Robynn Rueckert played an active role in procuring the policy from Plaintiff Farm Bureau," but nonetheless found that this factor weighed in favor of rescission because the court "need not engage in a leap of logic to presume that Robynn Rueckert had some understanding that her husband had procured family automobile insurance for himself and her daughter without disclosing her driving record." ACE argues that the court's ruling is based on a presumption, not evidence, because it acknowledged there was little evidence of Robynn's role in obtaining the policy. However, this factor looks to the relationship between the insured and the third party, suggesting that a close relationship allows for an inference that the third party knew of the fraud. Considering Robynn's close relationship to the insureds, as well as the insured's testimony that Robynn was present when the policy was obtained, the trial court did not clearly err by finding that this factor weighed in favor of rescission.

Next, the trial court concluded that the third factor[9] weighed against rescission because the court found that Robynn was blameless for the accident. Indeed, it is undisputed that Robynn was

---

[7] We also note that there is nothing in the record to suggest that Farm Bureau could not have discovered before the accident that the Bristol West policy had been rescinded. Further, while Farm Bureau wants to limit "the fraud" to the Bristol West policy for the first factor, it otherwise makes no such distinction and argues that Robynn was culpable for not disclosing her driving record at the insurance office. Farm Bureau cannot have it both ways. Either the fraud relates solely to the application question relating to uninsured vehicles, or it concerns all of the purported misrepresentations.

[8] Justice MARKMAN provided the following guidance on the second factor for courts to consider:

> Second, the specific relationship between the innocent third party and the fraudulent insured. If the innocent third party possessed some knowledge of the fraud—perhaps because of a familial or other relationship—equity may weigh in favor of rescission because that individual is seeking to recover from the insurer despite knowledge of the fraud. [*Farm Bureau II*, 503 Mich at 906 (MARKMAN, C.J., concurring).]

[9] The third factor identified by Justice MARKMAN concerns

> the precise nature of the innocent third party's conduct in the injury-causing event. Where the innocent third party acted recklessly or even negligently in the course of

in the crosswalk while the walk signal was on. Farm Bureau notes that Robynn had a high blood alcohol content (BAC) at the time of the accident and that the investigating officer, Detective Zabriskie, opined that, based on the position of Robynn's arms in the video, that she could have been walking quickly or running through the crosswalk. However, a high BAC and moving quickly through a crosswalk does not establish negligence, let alone recklessness. We also note that the trial court reviewed the dashcam footage that shows Robynn entering the crosswalk in a light-colored shirt as the truck begins to make its turn. For these reasons, the court did not clearly err by finding that Robynn was not at fault in the accident.

The court concluded that the fourth factor[10] favored rescission because, if the Farm Bureau policy was rescinded, Robynn would be entitled to no-fault benefits from ACE, the insurer of the accident vehicle. We see no error in this determination. The trial court also noted that this result would be inconsistent with the no-fault priority scheme, i.e., absent rescission, Farm Bureau would be first in priority. This comment has spawned arguments from both parties, but it had no bearing on the court's weighing of the factor. Further, it is unremarkable that rescission will result in the next-in-line insurer having priority. In weighing this factor, the court correctly focused on whether the third party had an alternative avenue for relief, and here Robynn could obtain benefits from ACE if rescission was granted.[11]

The trial court determined that the fifth factor[12] weighed against rescission because Mark (and Maryan) would not be relieved of tort liability if the Farm Bureau policy was enforced. Farm

---

the injury-causing event, equity may weigh in favor of rescission because the innocent third party could have avoided the injury by acting more prudently. [*Farm Bureau II*, 503 Mich at 906 (MARKMAN, C.J., concurring).]

[10] Justice MARKMAN provided the following explanation for the fourth factor:

Fourth, whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy. Such an avenue for recovery may include, for example, the assigned claims plan or health insurance. Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud. [*Farm Bureau II*, 503 Mich at 906-907 (MARKMAN, C.J., concurring).]

[11] The availability of other coverage should not be found where the claimant would be barred from recovery from a different insurer because of the one-year-back rule. See *Pioneer*, 331 Mich App at 412.

[12] The fifth factor concerns

whether enforcement of the insurance policy would merely relieve the fraudulent insured of what would otherwise be the insured's personal liability to the innocent third party. That is, whether enforcement of the insurance policy would subject the insurer to coverage for tort liability for an at-fault insured. In such a case, equity may weigh in favor of rescission because enforcement of the policy would transfer

Bureau maintains that when the fraudulent insured is not involved in the accident, this factor is simply inapplicable. Indeed, after the trial court issued its opinion, we concluded in *Pioneer* that the fifth factor was inapplicable under these circumstances. See *Pioneer*, 331 Mich App at 414. Accordingly, consistent with *Pioneer*, the fifth factor is not applicable in this case, and it does not weigh either in favor of or against rescission.

As noted, the five factors identified by Justice MARKMAN are nonexclusive. In this case, the trial court determined that the timing of the premium refund check, which was issued six months after Farm Bureau initially cancelled the policy and a month after Farm Bureau decided to rescind the policy, weighed against rescission. It is unclear how much weight the trial court gave to this factor, and while we do not view it is as particularly weighty, we decline to conclude that the trial court erred by considering it. Farm Bureau's failure to act to promptly, both in rescinding the policy and issuing the premium refund check, was a proper consideration.[13]

In sum, two of the factors identified by Justice MARKMAN weighed against rescission, two weighed in favor, the fifth factor was inapplicable and a sixth factor identified by the trial court weighed against rescission. But the factors are not to be merely counted up, and the ultimate issue is which innocent party should bear the loss. *Farm Bureau II*, 503 Mich 905, 907 (MARKMAN, C.J., concurring). The trial court carefully weighed the equities in this case after holding a multiday evidentiary hearing and concluded that rescission would be inequitable. We are also mindful that the burden was on Farm Bureau to show that rescission was warranted. Based on the record before us, the trial court did not abuse its discretion or commit legal error by denying rescission under the circumstances of this case.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh
/s/ James Robert Redford

---

liability to the innocent third party from the insured who committed the fraud to the insurer that did not commit wrongdoing. [*Farm Bureau II*, 503 Mich at 907 (MARKMAN, C.J., concurring).]

[13] Farm Bureau argues that, in considering the equities, the trial court should have considered that ACE was the only insurer who had been paid a premium for the period covering the accident. However, Farm Bureau did receive a premium payment and was attempting to collect the unpaid premiums until it decided to rescind the policy. In any event, the trial court did not abuse its discretion by not taking the unpaid premiums into account.