*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MENDELSON ORTHOPEDICS PC and
SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER LLC

      Plaintiffs,

and

DONALD DEVORE,

      Intervening Plaintiff-Appellant

and

LARRY MORGAN,

      Intervening Plaintiff

v

EVEREST NATIONAL INSURANCE
COMPANY and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,
formerly known as MICHIGAN ASSIGNED
CLAIMS PLAN,

      Defendants-Appellees,

and

FARMERS INSURANCE EXCHANGE,

      Defendant.

FOR PUBLICATION
May 28, 2019
9:00 a.m.

No. 341013
Wayne Circuit Court
LC No. 15-014600-NF

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

-1-

PER CURIAM.

Intervening plaintiff, Donald DeVore, appeals as of right from the trial court's orders granting summary disposition in favor of defendant, Everest National Insurance Company (Everest), and defendant, Michigan Automobile Insurance Placement Facility (MAIPF). We reverse both rulings and remand for further proceeding consistent with this opinion.

I. BACKGROUND

While driving a motor vehicle owned by Cracynthia Havlicsek in Birmingham, Michigan on June 2, 2015, intervening plaintiff, Larry Morgan, and DeVore, his passenger, were rear ended by another driver. Both Morgan and DeVore suffered injuries. Havlicsek had recently obtained an auto insurance policy issued by Everest on her vehicle. Everest paid some but not all of Morgan's and DeVore's medical bills. Everest covered Morgan's and DeVore's claims for personal protection insurance (PIP) benefits from June 2, 2015 until December 31, 2015, when it terminated each of their benefits based on the results of independent medical examinations.

Plaintiffs, Mendelson Orthopedics, PC (Mendelson) and Synergy Spine and Orthopedic Center, LLC (SSOC) sued Everest to recover payments for medical services rendered to Morgan related to the injuries he suffered in the June 2, 2015 accident. Pursuant to the parties' stipulation, the trial court permitted Mendelson and SSOC to amend their complaint to add the Michigan Assigned Claims Plan (MACP) as a defendant. Morgan and DeVore sued Everest in a separate action in Oakland County, but on September 2, 2016, they moved to intervene in this action. The trial court granted their motion and ordered them to dismiss their pending lawsuit against Everest without prejudice. In their intervening complaint, Morgan and DeVore alleged claims against Everest and the MAIPF. They alleged that Everest insured the vehicle in which they were injured and that they were entitled to PIP benefits under the policy which Everest refused to pay. They also alleged claims against the MAIPF that it had the obligation to immediately assign their benefits claims to an insurer to immediately provide them PIP benefits. Everest defended Morgan's and DeVore's claims on the ground that it rescinded Havlicsek's policy because she misrepresented material facts in her insurance application. The MAIPF denied having any obligations to provide Morgan and DeVore PIP benefits. Among the affirmative defenses, it stated that Morgan and DeVore failed to provide proof of loss as required under the no-fault act and failed to provide notice of their claims within the time permitted for filing an action for PIP benefits.

Everest moved for summary disposition under MCR 2.116(C)(10) of Morgan's and DeVore's claims for PIP benefits on the ground that it rescinded Havlicsek's insurance policy because she misrepresented her address on the policy application. Everest explained that it learned of Havlicsek's misrepresentation in August and September 2016, about one year and three months after the accident, during depositions of Havlicsek's mother and DeVore. Everest argued that Michigan law permitted its rescission of Havlicsek's policy because misrepresentations in the application justified rescission and declaration that the policy was void *ab initio*. Everest contended that its rescission of Havlicsek's policy precluded all plaintiffs from seeking coverage under the policy. Everest argued that, even though Morgan and DeVore may have been innocent of fraud, rescission of Havlicsek's policy precluded them from any recovery of benefits from it.

In opposition to Everest's motion, Morgan and DeVore argued that, because they were innocent third parties and Everest failed to raise the alleged misrepresentation in its reservation of rights letters to them, and only raised the fraud defense after the no-fault act's one-year limitation period expired, their ability to seek benefits from the MAIPF would be substantially prejudiced if Everest was not equitably estopped from asserting rescission as a bar to their innocent third-party claims. Morgan and DeVore asserted that Everest could not raise the fraud defense to deny them PIP benefits and that Havlicsek's misrepresentations did not automatically permit Everest to rescind the policy as to all parties. They contended that the trial court should consider whether Everest had a right to the equitable remedy of rescission under the circumstances.

The trial court ruled that Everest had the absolute right to rescind the policy for material misrepresentation. The trial court held that no genuine issue of material fact existed regarding that a material misrepresentation had been made by Havlicsek in her application for insurance. The trial court, therefore, granted Everest summary disposition. However, the trial court dismissed Everest without prejudice subject to the case being reinstated if our Supreme Court reversed this Court's decision in *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 770; 891 NW2d 13 (2016).

The MAIPF moved under MCR 2.116(C)(8) and (10) for summary disposition of DeVore's claims on the grounds that he never submitted an application for benefits or notice of a claim until more than one year after his June 2, 2015 accident which resulted in his ineligibility for no-fault benefits under MCL 500.3172 and MCL 500.3174. The MAIPF argued that DeVore lacked eligibility because he failed to provide his first notice of his claim within one year after his accident, and first gave it notice of his claim by filing his suit against it on September 19, 2016, one year and three months after his accident, which absolutely barred his claims. DeVore opposed the MAIPF's motion by arguing that *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 39; 878 NW2d 799 (2016), clarified that the one-year time limit for submitting a claim is extended under MCL 500.3145(1) when previous payments have been made to or for the benefit of an injured person by an insurer. DeVore explained that Everest rescinded Havlicsek's policy months after the one-year anniversary of his accident which triggered his suit against the MAIPF. He argued that his suit against the MAIPF, nevertheless, fell within one year after the last payment made by Everest. He argued that he complied with the no-fault act's notice requirement set forth in MCL 500.1374 in conjunction with MCL 500.3145(1). The trial court disagreed and granted the MAIPF's motion. DeVore now appeals both orders.

## II. STANDARDS OF REVIEW

We review de novo the trial court's decisions on motions for summary disposition under MCR 2.116(C)(10). *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is reviewed "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We review de novo

-3-

questions of statutory interpretation and the proper interpretation of a contract. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). We also review de novo motions for summary disposition under MCR 2.116(C)(8). *Bedford v Witte*, 318 Mich App 60, 64; 896 NW2d 69 (2016). A motion under MCR 2.116(C)(8) tests whether the opposing party has failed to state a claim on which relief can be granted. *Id*. "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). A trial court may grant summary disposition under MCR 2.116(C)(8) "only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

DeVore first argues that the trial court erred by granting Everest summary disposition because it declined to consider the equities to determine whether Everest had a right to rescind Havlicsek's policy and rely on the rescission, based on the fraud in the application defense, for disposition of DeVore's PIP benefits claims. We agree.

In *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018), a case very similar to this case, our Supreme Court addressed whether "the judicially created innocent-third-party rule, which precludes an insurer from rescinding an insurance policy procured through fraud when there is a claim involving an innocent third party, survived *Titan* which abrogated the judicially created easily-ascertainable-fraud rule." *Id*. at 396. The plaintiff incurred an injury in an auto accident while driving his mother's vehicle insured by the defendant insurer. The plaintiff sued the insurer for mandatory PIP benefits. The insurer obtained a default judgment rescinding the insurance policy on the ground that the plaintiff's mother procured the policy through fraud because it issued the policy to the mother's company for commercial use of the vehicle but her son regularly drove the vehicle, and she never disclosed that he would be a regular driver of it. *Id*. at 396-397. The insurer moved for summary disposition of the plaintiff's claim on the ground that rescission made the policy void *ab initio* resulting in the preclusion of recovery of benefits under the policy. *Id*. at 397. The trial court applied the innocent-third-party rule, "which prevents an insurer from rescinding an insurance policy on the basis of material misrepresentations in the application for insurance as to a claim made by a third party who is innocent of the fraud" and denied the motion. *Id*. at 397.

This Court denied the insurer's interlocutory application for leave to appeal and our Supreme Court remanded the case to this Court for consideration as on leave granted. On remand, this Court reversed the trial court and remanded for further proceedings, holding that *Titan* abrogated the innocent-third-party rule and no statute prohibited an insurer from raising a fraud defense in relation to PIP benefits claims. *Id*. at 397-398. The plaintiff again sought leave to appeal to our Supreme Court which granted his application. The Supreme Court affirmed this Court's holding that *Titan* abrogated the innocent-third-party rule but reversed this Court's holding that the insurer was automatically entitled to rescission. *Id*. at 398.

Our Supreme Court explained that, "unless clearly prohibited by statute, an insurer may continue to avail itself of any common-law defenses, such as fraud in the procurement of the policy." *Id*. at 400 (citing *Titan*, 491 Mich at 554-555). Therefore, the insurer could raise the

defense and seek rescission of the no-fault insurance policy, *id.* at 401, and could "avoid liability on the ground of fraud in the application for insurance even when the fraud was easily ascertainable and the claimant is a third party." *Id.* at 403. The Supreme Court stated that, in *Titan*, it determined that the innocent-third-party rule and the easily ascertainable-fraud rule overlapped, and whether taken together or separately, neither sufficed to preclude rescission. *Id.*

Our Supreme Court stated that the "no-fault act neither prohibits an insurer from invoking the common-law defense of fraud nor limits or narrows the remedy of rescission." *Id.* at 406. Further:

> an insurer has a reasonable right to expect honesty in the application for insurance, and there is nothing in the no-fault act that indicates that the reasonable expectations of an innocent third party surmount the reasonable expectations of the insurer. [*Id.* at 407.]

Nevertheless, even though an insurer may raise the fraud defense, our Supreme Court clarified that insurers are not "categorically entitled to rescission." *Id.* at 408. Because "a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court," and when a party seeks rescission "the trial court must balance the equities" to determine if the party is entitled to the relief it seeks. Trial courts are not required to grant rescission in all cases. *Id.* at 409-410 (quotation marks and citations omitted). Our Supreme Court explained:

> Moreover, when two equally innocent parties are affected, the court is "required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . ." *Lenawee* [*County Bd of Health*], 417 Mich [17], 31[; 331 NW2d 203 (1982)]. "[W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong." *Zucker v Karpeles*, 88 Mich 413, 430; 50 NW 373 (1891). "The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked." *Id.*
>
> In this instance, rescission does not function by automatic operation of the law. Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties. Equitable remedies are adaptive to the circumstances of each case, and an absolute approach would unduly hamper and constrain the proper functioning of such remedies. This Court has recognized that "[e]quity jurisprudence molds its decrees to do justice amid all the vicissitudes and intricacies of life" and that "[e]quity allows complete justice to be done in a case by adapting its judgments to the special circumstances of the case." *Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010) (quotation marks omitted), citing *Spoon-Shacket Co, Inc v Oakland Co*, 356 Mich 151, 163; 97 NW2d 25, and 27A Am Jur 2d, Equity, § 2, pp 520-521; see also *Lenawee*, 417 Mich. at 29 (adopting a case-by-case approach to rescission when a "mistaken

belief relates to a basic assumption of the parties upon which the contract is made, and which materially affects the agreed performances of the parties"), and Am Jur. 2d, § 2, pp 548-549.

Accordingly, although the policy between Sentinel and the insured, Mimo Investment is void *ab initio* due to the fraudulent manner in which it was acquired, the trial court must now determine whether, in its discretion, rescission of the insurance policy is available as between Sentinel and plaintiff. Therefore, we remand this matter to the trial court to exercise its discretion. *Lenawee*, 417 Mich at 31. [*Id*. at 410-412.]

In this case, DeVore invoked the doctrines of equitable estoppel, laches, and promissory estoppel, in an effort to persuade the trial court to consider the equities as between the parties because Everest's conduct placed DeVore in the position of having no recourse to any further recovery of PIP benefits. DeVore argued that Everest could not assert Havlicsek's fraud in the application as an absolute defense against his claims irrespective of the equities of the parties. The trial court declined to consider the equities because it believed that Michigan law compelled it to grant Everest summary disposition.[1]

Our Supreme Court decided *Bazzi* on July 12, 2018. *Bazzi* confirms that the trial court appropriately recognized Everest's right to rescind and treat the policy as void *ab initio* as between itself and Havlicsek. The Supreme Court, however, clarified in *Bazzi* that the trial court should consider and balance the equities to determine, as between Everest and DeVore, whether the equities permit Everest the equitable remedy of rescission as to DeVore or precluded it from relying on the fraud defense to DeVore's claims. De novo review of the record establishes that the trial court did not consider or determine the equities as between Everest and DeVore. The trial court specifically stated on the record that it would not do so. Under our Supreme Court's decision in *Bazzi*, the trial court should have exercised its discretion and determined whether Everest could rely on the rescission for its defense of DeVore's claims because an insurer is not automatically entitled to rescission as between all parties by operation of law. Because the trial court did not consider or determine the equities as between Everest and DeVore, we reverse its decision and remand this case to the trial court for further proceedings consistent with our Supreme Court's *Bazzi* decision.

DeVore next argues that the trial court failed to properly interpret the interplay between MCL 500.3174 and MCL 500.3145(1) and incorrectly applied the statutory provisions because MCL 500.3145(1) permits a PIP benefits claimant to give notice of a claim for benefits to the MAIPF one year from the last payment made by an insurer, which he did when he learned that Everest terminated his benefits because of Havlicsek's fraud in procurement of the policy. We agree.

---

[1] In the matter at bar, the trial court granted summary disposition on November 8, 2016, in favor of Everest and against Mendelson, Synergy, Morgan and DeVore. On March 31, 2017, the trial court granted summary disposition in favor of the MAIPF and against DeVore. On October 20, 2017, the trial court entered an order dismissing Morgan's claims against Farmers.

This issue primarily presents a question of statutory interpretation. The primary goal in statutory interpretation is to ascertain and give effect to the Legislature's intent. *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 695; 671 NW2d 89 (2003). This Court recently clarified:

> The proper role of the judiciary is to interpret and not write the law . . . . Accordingly, this Court enforces a statute as written if the statutory language is unambiguous. While a term must be applied as expressly defined within a given statute, undefined words are to be given their plain and ordinary meaning, taking into account the context in which the words are used[.] We may consult a dictionary in ascertaining plain meanings. This Court must avoid an interpretation that would render any part of a statute surplusage or nugatory. [*Williams v Kennedy*, 316 Mich App 612, 616; 891 NW2d 907 (2016), lv den 500 Mich 959 (2017) (quotation marks and citations omitted).]

MCL 500.3174 specifies how PIP benefits claims may be made through the MACP by notifying the MAIPF. MCL 500.3174 provides:

> A person claiming through the assigned claims plan shall notify the Michigan automobile insurance placement facility of his or her claim within the time that would have been allowed for filing an action for personal protection insurance benefits if identifiable coverage applicable to the claim had been in effect. The Michigan automobile insurance placement facility shall promptly assign the claim in accordance with the plan and notify the claimant of the identity and address of the insurer to which the claim is assigned. An action by the claimant shall not be commenced more than 30 days after receipt of notice of the assignment or the last date on which the action could have been commenced against an insurer of identifiable coverage applicable to the claim, whichever is later.

This statutory provision lacks ambiguity. The plain language of the statute requires a claimant to notify the MAIPF within the time that the no-fault act permits the claimant to file an action for PIP benefits if an insurance policy provided applicable coverage. Actions for recovery of PIP benefits under the no-fault act are governed by MCL 500.3145(1) which provides:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in

-7-

his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

This statutory provision also lacks ambiguity. The plain language of the statute requires a claimant to bring an action for PIP benefits within one year after the accident unless the claimant provided written notice of the injury to the insurer within one year of the accident. The statute provides alternatively that, in instances where an insurer paid PIP benefits for the injury, then an action may be commenced at any time within one year after the most recent allowable expense has been incurred. The statute does not prescribe a formal manner of giving notice but simply requires the claimant to plainly provide the injured person's name and the time, place, and nature of the injury.

The Legislature used the same language in MCL 500.3174 and MCL 500.3145 to specify when an action may be commenced. Because the Legislature chose to use the same language in each provision, "the Legislature intended that the different sections be treated in the same manner to accomplish the same purpose" and must be consistently interpreted. *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 227; 779 NW2d 304 (2009). Further, because our Supreme Court interpreted the language of MCL 500.3145(1) as constituting statutes of limitations, use of the same terms in MCL 500.3174 must be interpreted in the same manner. *Id*. at 228.

Therefore, proper interpretation and application of MCL 500.3174 requires applying MCL 500.3145(1) to determine when notice of claims to the MAIPF must be provided to make a claim through the MACP to the MAIPF for PIP benefits. In *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 33-34; 878 NW2d 799 (2016), our Supreme Court explained that MCL 500.3145(1) provides two exceptions to the one-year limitation period, the notice exception and the payment exception. The Supreme Court noted that the statute specified that an action for no-fault benefits could be filed more than a year after an accident if the insurer previously paid PIP benefits. The Supreme Court concluded that the Legislature's use of the disjunctive term "or" indicated an alternative requiring treatment of the notice and payment exceptions as independent alternatives. *Id*. at 34-35. The Supreme Court concluded that the payment exception's use of the term "previously" meant "something different from 'within 1 year after the accident.' " *Id*. at 35. The Supreme Court concluded that the payment exception "is satisfied by any prior payment." *Id*. The Supreme Court explained that to give full effect to the Legislature's intent required interpreting the language of the statute so that it did not render the payment exception mere surplusage. *Id*. 36-37. Accordingly, the payment exception, when properly understood, extends the action filing limitation period beyond one year from the accident when an insurer had made no-fault benefits payments. *Id*. at 37-38. The Supreme Court concluded "that the payment exception to the one-year statute of limitations in § 3145(1) applies when the insurer makes a payment prior to the commencement of an action for no-fault benefits." *Id*. at 38. Therefore, the Supreme Court held:

> that the first sentence of MCL 500.3145(1) allows for an action for no-fault benefits to be filed more than one year after the date of the accident causing the injury if the insurer has either received notice of the injury within one year of the

accident or has made a payment of no-fault benefits for the injury at any time before the action is commenced.  [*Id*. at 39 (emphasis added).]

Our Supreme Court's explanation of the interplay between MCL 500.3174 and MCL 500.3145 and its holding in *Jesperson* establishes that the payment exception extends the one-year notice limitation period to beyond one year after the injury accident and does not elapse until one year after the most recent allowable expense, work loss, or survivor's loss has been incurred.  We conclude that, where an insurer has made any payment of PIP benefits, the payment exception is triggered and the one-year notice limitation period commences upon the date that the most recent allowable expense, work loss, or survivor's loss was incurred.

In this case, the MAIPF moved for summary disposition on the ground that DeVore did not provide any notice of his claim to it until September 19, 2016, over one year and three months after he suffered injury in his accident, when the MAIPF received a copy of the complaint in this lawsuit.  The MAIPF asserted that DeVore failed to comply with the claim notice requirements of MCL 500.3174.  DeVore opposed the MAIPF's motion on the ground that he met the notice requirement because he brought his action against the MAIPF within one year of the last payment of PIP benefits by Everest.  DeVore supported his opposition by attaching to his opposition brief a comprehensive account statement of the payments made by Everest's claims management company of PIP benefits to Mendelson for medical services rendered to DeVore in relation to his June 2, 2015 accident.  The last date on which Everest made a payment occurred on January 22, 2016, for medical services rendered on December 11, 2015.  The record, therefore, reflects that the most recent allowable expense, work loss, or survivor's loss incurred by DeVore occurred on December 11, 2015.  DeVore filed his Intervening Complaint against the MACP and the MAIPF on September 23, 2016.  The MAIPF conceded in its motion for summary disposition that it received a copy of DeVore's complaint on September 19, 2016.  The record reflects that the MAIPF had notice of DeVore's claims for PIP benefits well within the one-year notice limitation period extended by the payment exception that applied in this case.  Therefore, DeVore's notice to the MAIPF fell within the time that would have been allowed for filing an action for PIP benefits as prescribed by MCL 500.3174.

Because DeVore complied with the notice requirements under MCL 500.3174 and MCL 500.3145, the trial court erred by granting summary disposition to the MAIPF.  We find no merit to the MAIPF's arguments because they contradict our Supreme Court's analysis and holding articulated in *Jesperson*.  Accordingly, we reverse the trial court's order granting summary disposition to the MAIPF.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly