*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

J. S. EVANGELISTA DEVELOPMENT, LLC,

Plaintiff-Appellant,

v

APCO, INC.,

Defendant-Appellee.

UNPUBLISHED
February 16, 2023

No. 357789
Livingston Circuit Court
LC No. 21-031094-CK

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals by right, following the entry of a stipulated order of dismissal, the trial court's underlying June 22, 2021 order requiring defendant to deliver 90 heating, ventilation, and air conditioning (HVAC) units to plaintiff, and requiring plaintiff to complete its outstanding obligations under the parties' February 24, 2021 settlement agreement (the settlement agreement).[1] We affirm.

---

[1] As a threshold matter, we reject defendant's argument that this Court lacks jurisdiction over this appeal because plaintiff, having stipulated to the entry of an order of dismissal, is not an aggrieved party and lacks an appeal of right. This Court "has jurisdiction of an appeal of right filed by an aggrieved party" from a final judgment or final order as defined in MCR 7.202(6). MCR 7.203(A)(1). Defendant does not dispute that the order of dismissal qualifies as a final order under MCR 7.202(6)(a)(i). Although a stipulated order dismissing claims is not always appealable by right, see *MLive Media Group v City of Grand Rapids*, 321 Mich App 263, 268; 909 NW2d 282 (2017), plaintiff's counsel in this case stipulated to the order "as to form only," see *Ahrenberg Mech Contracting, Inc v Howlett*, 451 Mich 74, 77-79; 545 NW2d 4 (1996). Further, because the trial court had already resolved plaintiff's claims in its June 3, 2021 order, there were no remaining issues to be resolved by entry of the stipulated order of dismissal. Plaintiff clearly was aggrieved by the entry of June 3 order, see *Matthew R Abel, PC v Grossman Investments Co*, 302 Mich App 232, 241; 838 NW2d 204 (2013) (a party is aggrieved for purposes of appeal when it has suffered

-1-

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal involves the sale and delivery of HVAC units pursuant to the settlement agreement, which the parties entered into in connection with previous litigation.

Defendant is a wholesale supplier of HVAC and plumbing-related equipment to licensed mechanical and plumbing contractors. In 2019, plaintiff, a commercial developer, contracted with defendant to deliver 90 "MagicPak" HVAC units for installation in a new facility plaintiff planned to construct. Plaintiff hired Braun Construction Group, Inc. (Braun), as the general contractor and, on April 30, 2019, instructed Braun to award an HVAC contract for the project to Douglas Mechanical, LLC (Douglas). Plaintiff then instructed Douglas's sister company, Cross Renovation, to purchase the HVAC units, which would be incorporated into the project. Defendant delivered the units to Douglas on August 22, 2019. Defendant charged Douglas $243,238 for the units, but after defendant did not receive payment, it recorded a claim of lien against plaintiff's property for $243,238, plus costs, a contractual time-price differential service charge of 1.5% a month, and actual attorney fees. Braun, having also not been paid by Douglas, also filed a construction lien. And Douglas, having not been paid by plaintiff, also filed its own construction lien. On April 15, 2020, Braun filed a lien foreclosure action in circuit court and named defendant, Douglas, and other subcontractors as necessary parties. Defendant then filed a third-party claim to foreclose its lien. It also sought other relief from plaintiff, Braun, Douglas, and others. Douglas also filed a third-party claim to foreclose its lien. Overall, a significant number of disputed issues arose between the parties in the underlying litigation. Relevant to this appeal, plaintiff challenged the markup that Douglas placed on the units. Instead of charging defendant's sales price of $243,238, Douglas sought to charge plaintiff $375,000, which included overhead, storage costs, and a markup on the units.

Although Braun, Douglas, plaintiff, and defendant attempted to negotiate a joint settlement, only defendant and plaintiff reached a final settlement agreement on February 24, 2021. Specifically, defendant agreed to discharge its construction lien in exchange for plaintiff's payment of $185,000, and defendant was then to deliver the 90 HVAC units that remained in Douglas's warehouse, along with component parts, to plaintiff's warehouse in Livonia. In particular, the settlement agreement provided that

> [Defendant] agrees to deliver the MagicPak units in Exhibit A to [plaintiff's] warehouse, located in Livonia, Michigan upon [plaintiff's] request. [Plaintiff] shall provide [defendant] with 3 business days' notice for delivery at no charge.

The settlement agreement also contained a merger clause providing that the agreement "constitutes the entire understanding between the Parties." The settlement agreement did not require defendant to take any action concerning the outstanding liens by Douglas or Braun. The settlement

---

a concrete and particularized injury), and plaintiff properly may be considered an aggrieved party for purposes of this appeal. Further, even if this Court lacked jurisdiction as of right, we would exercise our discretion to treat plaintiff's claim of appeal as an application for leave to appeal and consider plaintiff's arguments as on leave granted. See *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

agreement also did not provide that delivery of the units by defendant was to be conditioned on Douglas agreeing to release them from its warehouse, or that defendant agreed to otherwise be responsible for resolving Douglas's or Braun's construction liens against plaintiff's property.

Plaintiff paid defendant $185,000, and defendant discharged its lien in accordance with the agreement. After plaintiff requested delivery of the HVAC units on March 15, 2021, defendant arranged to deliver the units to plaintiff, but Douglas refused to release the units from its warehouse without plaintiff first satisfying Douglas's lien. Consequently, defendant was unable to deliver the units.

Plaintiff thereafter filed suit against defendant for breach of contract and conversion, claiming that defendant had materially breached the settlement agreement by failing to deliver the units within three days of plaintiff's request. Plaintiff also claimed that defendant's refusal to return the $185,000, despite knowing that it could not deliver the units, constituted common-law and statutory conversion. Plaintiff moved for summary disposition of its claims under MCR 2.116(C)(10). After a hearing, the trial court denied plaintiff's motion, held the case in abeyance pending further proceedings in the underlying case, and ordered defendant to place the $185,000 at issue into an escrow account. Plaintiff and defendant both moved for reconsideration of the trial court's order. Defendant also filed an emergency motion for relief from the trial court's order, arguing that Douglas had now agreed to allow defendant to retrieve the units for delivery to plaintiff but that plaintiff was refusing delivery. On June 3, 2021, the trial court entered an order granting defendant's motion for reconsideration regarding the necessity of placing the $185,000 in escrow, denying the remainder of defendant's reconsideration motion, and denying plaintiff's motion for reconsideration. The order also required defendant to deliver the HVAC units and required plaintiff to complete its outstanding obligations under the settlement agreement. A stipulated order of dismissal was subsequently entered, as discussed. This appeal followed.

## II. MOOTNESS

Preliminarily, we reject defendant's argument that this appeal is moot because plaintiff has now accepted delivery of the HVAC units in compliance with the trial court's June 3, 2021 order. An issue becomes "moot if this Court's ruling 'cannot for any reason have a practical legal effect on the existing controversy,' " *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013) (citation omitted), or "when a subsequent event renders it impossible for the appellate court to fashion a remedy." *Kieta v Thomas M Cooley Law Sch*, 290 Mich App 144, 147; 799 NW2d 579 (2010). Although plaintiff has accepted delivery of the HVAC units, it argues on appeal that it should not have been compelled to accept the units and is entitled to a return of its $185,000 because defendant first breached the settlement agreement. Plaintiff also seeks attorney fees and costs with respect to both its breach-of-contract claim and its claim for statutory and common-law conversion. If plaintiff's arguments are credited, it is possible for this Court to fashion a remedy. Therefore, this appeal is not moot.

## III. BREACH OF CONTRACT

Plaintiff argues that the trial court erred by denying its motion for summary disposition, and its motion for reconsideration, based on defendant's alleged breach of contract. Specifically, plaintiff argues that it is entitled to the return of its $185,000, among other damages, because

defendant materially breached the settlement agreement by failing to deliver the HVAC units within three days after plaintiff requested delivery, thereby excusing plaintiff's performance under the agreement. We disagree.

We review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008). To the extent that our review involves the trial court's denial of plaintiff's motion for summary disposition, we review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 777; 910 NW2d 666 (2017). "A motion under [MCR 2.116(C)(10)] tests the factual sufficiency of the complaint." *Id*. (quotation marks and citation omitted). "The motion is properly granted if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted).

This Court also reviews de novo questions of contract interpretation. *Johnson v QFD, Inc*, 292 Mich App 359, 364; 807 NW2d 719 (2011). To the extent that plaintiff seeks rescission of the settlement agreement,

> [t]he remedy of rescission is granted only in the sound discretion of the court. An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. An abuse of discretion necessarily occurs when the trial court makes an error of law. The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. [*Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020), lv den 506 Mich 1022 (2020) (quotation marks and citations omitted).]

Plaintiff argues that defendant materially breached the parties' settlement agreement by failing to deliver the HVAC units within three days after it requested delivery. We disagree.

In *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016), our Supreme Court explained:

> [O]ur primary goal in interpreting any contract is to give effect to the parties' intentions at the time they entered into the contract. We determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning. If the language of a contract is unambiguous, we must enforce the contract as written. [Citations omitted.]

In addition, "[a] court must look at the contract as a whole and give meaning to all terms." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015) (quotations omitted). "A contract is ambiguous when, after considering the entire contract, its words may reasonably be understood in different ways." *Id*. (citation omitted). The party claiming a breach of contract "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America*, 499 Mich at 100.

We note that, contrary to defendant's argument, we do not interpret the settlement agreement as requiring, as a condition precedent to defendant's performance, that plaintiff resolve its dispute with Douglas such that the HVAC units in Douglas's possession could be released to defendant, thereby permitting defendant to deliver them to plaintiff in accordance with the parties' agreement. "[C]ourts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language in the contract." *Real Estate One v Heller*, 272 Mich App 174, 179; 724 NW2d 738 (2006) (quotation marks and citations omitted). "Accordingly, unless the contract language itself makes clear that the parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract." *Id.* In this case, although defendant may have assumed that plaintiff would have to resolve its dispute with Douglas before defendant's duty to deliver arose, such a condition precedent was not clearly included within the agreement. In addition, the agreement contains a merger clause. A merger clause "prohibit[s] consideration of parol evidence by nullifying agreements not included in the written agreement." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 507 n 14; 579 NW2d 411 (1998). Under the circumstances, defendant's argument that plaintiff was required to resolve its dispute with Douglas as a condition precedent to defendant's duty to perform is not persuasive.

Notwithstanding the lack of a condition precedent, we find no merit to plaintiff's argument that it was excused from performing its contractual duties, or entitled to recission of the contract, because defendant substantially breached the settlement agreement first. One party's substantial breach of a contract may relieve the other party of its obligation to perform under the contract. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 613; 792 NW2d 344 (2010). Our Supreme Court has explained that a substantial breach may be found

> in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party. [*McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted).]

A material breach affecting a substantial or essential part of the contract may also warrant rescission. *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997). In general,

> [i]n determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive. Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the wilfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [*Id.* (citations omitted).]

When a contract does not provide that time is of the essence, a party's failure to adhere to the time specified in a contract "does not affect an element so essential as to amount to a breach which is contemplated by the rule as 'substantial.' " *McCarty*, 372 Mich at 574; see also *A E Giroux, Inc v Contract Servs Assoc, Div of Premium Corp of America, Inc*, 99 Mich App 669, 670-

671; 299 NW2d 20 (1980) (holding that where time is not of the essence, a short delay in payment, which does not result in detriment to the payee, may still constitute substantial performance of the contract). "[T]he general rule is that time is not to be regarded as of the essence of a contract unless made so by express provision of the parties or by the nature of the contract itself or by circumstances under which it was executed." *In re Day Estate*, 70 Mich App 242, 246; 245 NW2d 582 (1976) (citation omitted). If the parties do not specifically state that time is of the essence, "[a]ny words which show that the intention of the parties is that time shall be of the essence of the contract or any clause which provides in *unequivocal terms* that if the fulfilment is not within a specified time *the contract is to be void* will have that effect." *Friedman v Winshall*, 343 Mich 647, 656; 73 NW2d 248 (1955), quoting 12 Am Jur, Contracts, § 311, p 866 (emphasis added).

In this case, plaintiff argues that defendant breached the settlement agreement by failing to deliver the HVAC units within three days of plaintiff's request. It is undisputed that the units were not, in fact, delivered to plaintiff's warehouse within three days of plaintiff's request. However, the settlement agreement did not require delivery within three days of plaintiff's request. It instead required delivery "upon" plaintiff's request, and it required plaintiff to provide three days notice before delivery was required. Moreover, and even assuming that defendant did breach the settlement agreement by failing to deliver the units within a timeframe arguably contemplated by the parties in the settlement agreement, the settlement agreement did not contain a provision stating that time was of the essence. It required defendant to deliver the HVAC units to plaintiff upon plaintiff's request, but it did not provide a specific date for performance; it merely required that plaintiff provide defendant three days' notice before delivery. Moreover, the settlement agreement contained no provision imposing any specific sanction in the event that defendant failed to deliver the units within any particular time period. The settlement agreement also provided that plaintiff could not install the units "until construction of the nursing home at which time the mechanicals have been installed." The provision discussing delivery also protected plaintiff by postponing the start of the warranty period until the units were actually installed. Nothing in the language of the settlement agreement itself indicated that the parties considered time to be of the essence, or that defendant's failure to deliver within any specified timeframe would be such a substantial breach as to relieve plaintiff of its duties under the agreement.

Additionally, plaintiff argued in the trial court that it might not even build the planned facility, and that plaintiff continued to engage in contract disputes with the general manager, the HVAC installer, and others at the time the settlement agreement was signed. There is no indication that the "late" delivery of the units otherwise imposed any hardship on plaintiff or amounted to a complete failure of consideration on defendant's part. *McCarty*, 372 Mich at 574. Moreover, defendant had partly performed under the settlement agreement by removing its construction lien. *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App at 348. These circumstances support the conclusion that the parties did not intend for the time of performance to affect plaintiff's rights such that time would be of the essence. We conclude that the asserted timeframe for delivery was not a material term of the settlement agreement. Consequently, plaintiff was not entitled to revoke its own performance because of defendant's failure to deliver the units within a particular timeframe. *McCarty*, 372 Mich at 574.

We further hold that the trial court did not abuse its discretion by denying plaintiff's request for rescission. Rescission is an equitable remedy, the purpose of which is to restore the status quo. *Augustyn v Zawacki*, 250 Mich 218, 220; 229 NW 453 (1930); *Papciak v Morawski*, 243 Mich

157, 158; 219 NW 601 (1928); *McMullen v Joldersma*, 174 Mich App 207, 218-219; 435 NW2d 428 (1988). "On a rescission, it is necessary, as a rule, to tender back the property received in exchange for the consideration sought to be recovered, so as to restore the original status quo, and, when the part[y] seeking relief cannot make restitution, through [its] own acts or fault, rescission is generally denied." *Latimer v Piper*, 261 Mich 123, 133; 246 NW 65 (1933). In the instant case, not only did defendant not commit a material breach, but it had already partly performed its obligations under the settlement agreement by discharging its construction lien. Because the trial court could not restore defendant's construction lien, the court did not abuse its discretion when it held that rescission was not appropriate. *Pioneer State Mut Ins*, 331 Mich App at 405.

Additionally, plaintiff has not demonstrated the existence of a mutual mistake of fact sufficient to warrant recission of the contract. "A contractual mistake is a 'belief that is not in accord with the facts.' " *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 24; 331 NW2d 203 (1982) (citation omitted). Our Supreme Court has stated that a mutual mistake is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006). However, this erroneous belief "must relate to a fact in existence at the time the contract is executed. That is to say, the belief which is found to be in error may not be, in substance, a prediction as to a future occurrence or non-occurrence." *Messerly*, 417 Mich at 24 (citation omitted). A trial court has discretion to rescind a contract if a mutual mistake exists. *Id*. at 26. "The determination whether [a party is] entitled to rescission involves a bifurcated inquiry: (1) was there a mistaken belief entertained by one or both of the parties to a contract? and (2) if so, what is the legal significance of the mistaken belief?" *Garb-Ko, Inc v Lansing-Lewis Servs, Inc*, 167 Mich App 779, 782; 423 NW2d 355 (1988), lv den 431 Mich 874 (1988).

In this case, both parties were aware of Douglas's construction lien and that the HVAC units were subject to that lien. While plaintiff may have believed that Douglas would simply release the units without enforcing its lien, plaintiff presents no evidence, other than arguably by implication arising from the agreement's silence on the matter, that defendant shared this belief. *Ford Motor Co*, 475 Mich at 442. Moreover, a mistaken belief that Douglas would not enforce its lien if defendant attempted the removal of the HVAC units from Douglas's warehouse would be, in substance, "a prediction as to a future occurrence or non-occurrence." *Messerly*, 417 Mich at 24 (citation omitted). Plaintiff has not demonstrated that it is entitled to recission of the settlement agreement on the basis of a mutual mistake.

Plaintiff also cursorily argues for the first time on appeal that it is entitled to rescission under the perfect-tender rule of Michigan's Uniform Commercial Code (UCC), MCL 440.1101 *et seq*. However, because plaintiff does not address this issue with specificity, we deem it abandoned. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). In any event, plaintiff presented no evidence to the trial court that the HVAC units failed to meet the definition of a conforming good under MCL 440.2106(2).

In sum, we hold that the trial court did not err by denying plaintiff's motion for summary disposition, or by denying its motion for reconsideration and ordering performance under the settlement agreement. *Woods*, 277 Mich App at 630; *Candler*, 321 Mich App 772, 777. The trial court correctly determined that defendant had not materially breached the settlement agreement so as to excuse plaintiff's performance under the contract. *Johnson*, 292 Mich App at 364.

## IV. CONVERSION

Plaintiff also argues that defendant's retention of the $185,000 payment despite failing to deliver the HVAC units as requested supports its claims for statutory and common-law conversion. Specifically, plaintiff argues that defendant's failure to return plaintiff's $185,000 payment when it discovered it could not deliver the units "constitutes common law and statutory conversion as a matter of law and it is grounds for personal liability and sanctions." We disagree.

We review de novo questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). As explained in *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001):

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [Citations omitted.]

In support of its claim of statutory conversion, plaintiff relies on MCL 440.3420, which provides that the law of conversion applies to "instruments." However, "[i]nstrument means a negotiable instrument." MCL 440.3104(2). Subject to exceptions that are not applicable in this case, "negotiable instrument" is defined as

> an unconditional promise or order *to pay a fixed amount of money*, with or without interest or other charges described in the promise or order, if all of the following apply:
>
> (a) It is payable to bearer or to order at the time it is issued or first comes into possession of a holder.
>
> (b) It is payable on demand or at a definite time.
>
> (c) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain an undertaking or power to give, maintain, or protect collateral to secure payment, an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or a waiver of the benefit of any law intended for the advantage or protection of an obligor. [MCL 440.3104 (emphasis added).]

MCL 440.3102(1) specifically provides that Article 3 of Michigan's UCC, which includes MCL 440.3420, "*does not apply to money*, to payment orders governed by article 4a, or to securities governed by article 8." (Emphasis added.) Therefore, plaintiff's funds were not an "instrument" to which MCL 440.3420 applies.

More generally, plaintiff has not established the elements of either a statutory or common-law conversion claim. Conversion sounds in tort, *Elia Cos, LLC v Univ of Mich Regents*, 335 Mich App 439, 450; 966 NW2d 755 (2021), and "the distinguishing feature of a tort [is] that it consists in the violation of a right given or neglect of a duty imposed by law, *and not by contract*," *In re Bradley Estate*, 494 Mich 367, 383; 835 NW2d 545 (2013) (quotation marks and citation omitted; emphasis added; alteration in original). Accordingly, as a general rule, "a tort action will not lie when based solely on nonperformance of a contractual duty." *Crews v Gen Motors Corp*, 400 Mich 208, 226; 253 NW2d 617 (1977). Such is the case here. Defendant received the funds at issue under the settlement agreement. Plaintiff sought the return of the funds because defendant allegedly failed to perform part of its obligations under the agreement. Plaintiff cannot base a tort claim on defendant's alleged nonperformance of a contractual duty. Accordingly, the trial court did not err by denying plaintiff's motion for summary disposition with respect to plaintiff's conversion claims. *Candler*, 321 Mich App 772, 777.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron